UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

L. T. TUCKER #132271,

    Plaintiff,

v.	Case No.   2:18-cv-00020
	HON.   ROBERT J. JONKER

ARRON WENER, et al.,

    Defendants.
_____/

REPORT AND RECOMMENDATION

This is a civil rights action brought by state prisoner L. T. Tucker pursuant to 42 U.S.C. § 1983. Plaintiff alleges that, while he was confined in the Alger Correctional Facility, Defendants Arron Wener, Christine Newhouse, Aramark Correctional Services, LLC, J. Nayback, and guard Knaus retaliated against him by issuing him a class II misconduct ticket for disobeying a direct order and finding him guilty after a hearing in violation of his First Amendment and Fourteenth Amendment rights.

Plaintiff states that he is a jailhouse lawyer and has been a civil rights advocate for 40 years. During June of 2015, Plaintiff tried to verbally resolve issues regarding unsafe work conditions in the prison kitchen. Plaintiff complained to Defendants Wener and Newhouse. Defendant Newhouse told Plaintiff that if he kept talking about filing grievances about unsafe work conditions, his "black ass" would be fired for complaining so much. On June 22, 2015, when Plaintiff told Defendant Newhouse that he would file a grievance, Defendant Newhouse looked toward Defendant Wener and said "make sure you get him out of here."

Plaintiff asserts that later in the day he was trying to perform his daily work duties, when Defendant Wener instructed him to fill Styrofoam cups with cereal. Plaintiff argues that

this was not one of his assigned duties and that a white prisoner with less seniority was available to perform this job. Plaintiff told Defendant Wener "I ain't going to be your slave, you are on some bullshit."  Plaintiff states that Defendant Wener overreacted and ordered him back to his unit. Plaintiff requested to speak with Defendant Wener's supervisor.  Plaintiff told Defendant Newhouse that Defendant Wener was wrong to assign him to a job that should be assigned to the individual with the least seniority. Defendant Newhouse told Plaintiff to return to work.

Plaintiff then observed Defendants Wener and Newhouse speaking in a back office. Defendant Newhouse then told an officer to take Plaintiff to his unit.  Plaintiff states that this officer told Plaintiff to name him as a witness because Defendant Wener's actions were questionable.  Defendant Wener issued Plaintiff a misconduct ticket for disobeying a direct order. After the misconduct ticket was issued, Defendant Nayback reviewed the misconduct report with Plaintiff on June 23, 2015.  Plaintiff had a hearing on the misconduct ticket before Defendant Knaus.  Plaintiff admitted to making the comment "I aint going to be your slave, you are on some bullshit" to Defendant Wener.  As a result, Defendant Knaus found Plaintiff guilty of disobeying a direct order.  Plaintiff received ten days loss of privileges.  That decision was affirmed on appeal.

Plaintiff filed motions for summary judgment (ECF No. 32 and No. 59).  Plaintiff argues that due to genuine issues of fact, trial should be scheduled.  Defendants Wener and Newhouse filed responses and requested summary judgment (ECF No. 45 and No. 72). Defendants Knaus and Nayback filed responses (ECF No. 46 and No. 71).  Defendants Knaus and Nayback filed a motion for summary judgment (ECF No. 59). Plaintiff filed a response (ECF No. 78).  This matter is fully briefed and no further briefing is necessary.

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).[1]

---

1 Defendants Nayback and Knaus argue that Plaintiff failed to properly exhaust his grievance remedies against them. Plaintiff filed grievance LMF 1507 1601 27a naming Defendant Knaus. (ECF No. 60-6, PageID.558-562). Plaintiff's grievance was rejected at Step I because his grievance was related to the misconduct hearing process, was non-grievable according to PD 03.02.130 and needed to be raised during his misconduct hearing. The rejection was upheld through Step III of the grievance process. Plaintiff asserted his defense during the misconduct hearing and appealed his misconduct finding. Plaintiff did what he was instructed. Plaintiff did not have to exhaust a non-grievable issue.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Defendants argue that Plaintiff was not engaged in protected conduct when he voiced concerns about working conditions. Plaintiff asserts that he was forced to handle hot cooking pots without gloves and walk on floors covered with water and food items each working day. Plaintiff states that he was told by Defendant Newhouse that if he did not stop talking about filing grievances, he would be fired for complaining too much. After Plaintiff told Defendants Wener and Newhouse that he intended to file grievances against them, Defendant Newhouse told Defendant Wener "make sure you get him out of here." Defendants argue that mere workplace gripes are not matters of public concern and are not considered protected conduct for purposes of a retaliation claim.

An inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral. *Maben v. Thelen*, 887 F.3d 252, 266 (6th Cir. 2018); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 299 (3d Cir. 2016) ("[The prisoner's] oral grievance to [the prison officer] regarding the anti-Muslim harassment he endured at work constitutes protected activity under the First Amendment."); *Pearson v. Welborn*, 471 F.3d 732, 741 (7th Cir.

2006) ("[W]e decline to hold that legitimate complaints lose their protected status simply because they are spoken."); *see also Pasley v. Conerly*, 345 F. App'x 981, 985 (6th Cir. 2009) (finding that a prisoner engaged in protected conduct by *threatening* to file a grievance).  "Nothing in the First Amendment itself suggests that the right to petition for redress of grievances only attaches when the petitioning takes a specific form." *Holzemer v. City of Memphis*, 621 F.3d 512, 521 (6th Cir. 2010) (finding that a conversation constituted protected petitioning activity) (quoting *Pearson*, 471 F.3d at 741).

Nevertheless, a prisoner's act of calling the hearing officer a "foul and corrupt bitch" was not protected conduct because such behavior fell within the definition of "insolence" under the MDOC Policy Directive governing prisoner misconduct.  *See Lockett v. Suardini*, 526 F.3d 866, 874 (6th Cir. 2008).  *See also Caffey v. Maue*, 679 F. App'x 487 (7th Cir. Feb. 15, 2017) (holding that an inmate's name-calling of guards (calling them unprofessional) was a challenge to the guards' authority that was not protected by the First Amendment); *Felton v. Huibregtse*, 525 F. App'x 484, 487 (7th Cir. 2013) (holding that the use of disrespectful language was not protected conduct) (citing cases); *Freeman v. Tex. Dep't of Crim. Justice*, 369 F.3d 854, 858, 864 (5th Cir. 2004) (concluding that an inmate who accused a chaplain of theological errors during a religious service had engaged in an unprotected challenge to institutional authority). Plaintiff has alleged that he engaged in protected conduct by threatening to file grievances against Defendant Newhouse and Wener for subjecting him to unsafe working conditions and for refusing to address his verbal complaints.  In the opinion of the undersigned, Plaintiff engaged in protected conduct by threatening to file a grievance.

Defendants next argue that the issuance of a class II misconduct and subsequent guilty finding is not adverse action.  Defendants state that the most severe restriction imposed for

- 5 -

a class II violation is confinement to quarters, loss or privileges, extra duty, and restitution. After the hearing, Plaintiff received ten days loss of privileges. Defendants argue that loss of privileges is not considered adverse conduct citing *Ingram v. Jewell*, 94 Fed. Appx. 271, 273 (6th Cir. 2004). However, the Sixth Circuit has held that even seven days' loss of privileges -- which includes loss of the rights to use the exercise facilities, to attend group meetings, to use the telephone, to have visitors, to access the general library, and to access the activity room – amounts to adverse action. *Maben*, 887 F.3d 252 (quoting *Hill v. Lapin*, 630 F3d 468, 474 (6th Cir. 2010) (holding that "actions that result in more restrictions and fewer privileges for prisoners are considered adverse")). The *Maben* court noted the contrary holding in *Ingram*, 94 Fed. Appx. at 273 (citing *Thaddeus–X*, 175 F.3d at 396–97) (14 days loss of privileges does not constitute an adverse action), and, because *Maben* was a published opinion, it effectively overruled *Ingram*.

Defendants Wener and Newhouse argue that the misconduct ticket was issued due to Plaintiff's admitted conduct and as a simple ordinary disciplinary action that arose from Plaintiff's response to a routine order from his work supervisor. Defendants Nayback and Knaus argue that their actions were not retaliatory but based upon the written misconduct ticket.

> Under the third element, "[u]sually, the question of causation is a factual issue to be resolved by a jury, and may be satisfied by circumstantial evidence." *Harris v. Bornhorst*, 513 F.3d 503, 519–20 (6th Cir. 2008) (citing *Hartsel v. Keys*, 87 F.3d 795, 803 (6th Cir. 1996) ). "Nonetheless, a court may grant summary judgment even in a causation inquiry, where it is warranted." *Hartsel*, 87 F.3d at 803 (citing *Langford v. Lane*, 921 F.2d 677, 683–84 (6th Cir. 1991)). "Once the plaintiff has met his burden of establishing that his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant." *Thaddeus–X*, 175 F.3d at 399 (citing *Mount Healthy*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471). "If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment." *Id*.

Maben, 887 F.3d at 267.

> Defendant Wener issued a class II misconduct report describing the violation as:
>
>> While preparing Ramadan meals on the front line I asked Tucker, Prisoner #132271 to start putting Branflakes into Styrofoam cups. His response was "I aint going to be your slave, you are on some bullshit." Tucker is to comply with his daily assigned duties and any tasks asked of him that extend beyond his assigned duties. Tucker was ID'd by frequent contact & master kitchen count board. Prisoner Tucker made direct eye contact with me throughout the exchange.

(ECF No. 17-4, PageID.166). Defendant Nayback reviewed the misconduct ticket with Plaintiff and Plaintiff refused to sign. Plaintiff received a copy of the misconduct ticket and a hearing was scheduled. Id. Defendant Nayback had no other involvement.

A hearing was conducted by Defendant Knaus who found Plaintiff guilty of the class II misconduct of disobeying a direct order. Plaintiff was sanctioned with ten days loss of privileges. The hearing report states in part:

> Tucker indicated that he was directed by Wener to fill the cups but refused as he was assigned to another kitchen assignment. . . . Tucker is found guilty of the charges Disobeying a Direct Order. This hearings officer has no reason to doubt the reporting officer's version of the events. Tucker admitted to being told to fill the cups, and not doing as instructed. Tucker did not present a creditable defense.

(PageID.167). Plaintiff argues that he should not have received the misconduct because his speech is protected and Defendant Wener never politely asked him to fill the Styrofoam cups, instead he ordered him to fill the cups like a slave. In the opinion of the undersigned, this case is factually distinguishable from the *Maben.* Maben presented evidence that he was given a class II misconduct ticket in retaliation for complaining about food proportions. The evidence showed that Maben did not receive an appropriate amount of food and informed kitchen staff. He then received more food. Maben never raised his voice or took any inappropriate action. Rather, it was the defendant who became belligerent and started yelling at plaintiff. Defendant issued the

misconduct ticket immediately after Maben complained about his food portion. In this case, Plaintiff admits to making what can only be described as an inappropriate comment to Defendant Wener and admits that he refused the task that he was assigned. Under these circumstances, Defendant Wener properly issued Plaintiff the class II misconduct ticket. In the opinion of the undersigned, Plaintiff has failed to establish that Defendants Wener and Newhouse took retaliatory action against him by issuing the misconduct ticket for refusing to perform the assigned job task. In addition, Defendant Nayback's only action was to review the misconduct ticket with Plaintiff, provide a copy, and set the issue for a hearing. (affidavit of Defendant Nayback (Franklin), ECF No. 66, PageID.778-780). Defendant Knaus held the hearing and upheld the misconduct charge after determining that Plaintiff admitted to the statement and refused the order by his supervisor Defendant Wener. (affidavit of Defendant Knaus, ECF No. 60-3, PageID.488-490). In the opinion of the undersigned, Plaintiff cannot show that Defendants took retaliatory actions against him.

Plaintiff asserts that Defendants violated his Fourteenth Amendment equal protection rights. Plaintiff argues that Defendants conspired together to find him guilty of the misconduct due to his race. The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). When a law adversely impacts a "suspect class" such as one defined by race, alienage, or national origin, or invades a "fundamental right" such as speech or religious freedom, the rigorous "strict scrutiny" standard ordinarily governs, whereby such laws "will be sustained only if they are suitably tailored to serve a compelling state interest." *City of Cleburne*, 473 U.S. at 440.

However, while a convicted prisoner does not forfeit all constitutional protections by virtue of his confinement, "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights . . . ." *Price v. Johnston*, 334 U.S. 266, 285 (1948). "The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives – including deterrence of crime, rehabilitation of prisoners, and institutional security." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (citing, *inter alia*, *Turner v. Safley*, 482 U.S. 78, 84 (1987)).

To establish a violation of the Equal Protection Clause, an inmate must show that the defendants purposefully discriminated against him. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977). Such discriminatory purpose must be a motivating factor in the actions of the defendants. *Id.* at 265-66. "A plaintiff presenting a race-based equal protection claim can either present direct evidence of discrimination, or can establish a prima facie case of discrimination under the burden-shifting scheme set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Umani v. Mich. Dep't of Corr.*, 432 F. App'x 453, 458 (6th Cir. 2011). In the opinion of the undersigned, Plaintiff has failed to establish facts which could show that he was issued a class II misconduct and found guilty due to his race. The facts establish that Plaintiff received the misconduct ticket when he refused a job duty. Plaintiff believes that he should not have been ordered to fill Styrofoam cups and a white prisoner with less seniority should have been given the job. Plaintiff did not have the right to decide which jobs responsibilities he would perform and to refuse a job assignment by stating: "I ain't going to be your slave, you are on some bullshit."

To the extent that Plaintiff is claiming his state law rights were violated, it is recommended that this court refuse to exercise pendent jurisdiction over such claims. Plaintiff

asserts a gross negligence claim.  (First Amended Complaint, Fifth Cause of Action, ECF No. 17, pageID.148-149).   Claims raising issues of state law are best left to determination by the state courts, particularly in the area of prison administration.   In addition, pendent jurisdiction over state law claims cannot be exercised after all federal claims have been dismissed.   *United Mine Workers v. Gibbs*, 383 U.S. 715, 726-727, 86 S. Ct. 1130, 1139 (1966); *Moon v. Harrison Piping Supply, et al.*, 465 F.3d 719 (6th Cir. Sep. 28, 2006); *Smith v. Freland*, 954 F.2d 343, 348 (6th Cir.), *cert. denied*, 504 U.S. 915, 112 S.Ct. 1954 (1992).

> That power need not be exercised in every case in which it is found to exist. It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right.  Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them, *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L. Ed. 1188.  Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.  Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.  Similarly, if it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals.

*United Mine Workers v. Gibbs*, 383 U.S. 715, 726-727, 86 S. Ct. 1130, 1139 (1966).[2]   Therefore, it is recommended that the Court dismiss Plaintiff's state law claims.

---

[2] **Error! Main Document Only.**To the extent that Plaintiff is suing the individual Defendants in their official capacities, such claims are barred by the Eleventh Amendment.  *See Will v. Michigan Department of State Police*, 491 U.S. 58 (1989) (claims against a state agency or an official in his/her official capacity are claims against the state, and are not claims against a "person" subject to Section 1983 liability); *Frederick v. Abramajtys*, No. 94-1935, 1995 WL 564321, **1 (6th Cir. Sept. 21, 1995) (unpublished).

Accordingly, it is recommended that Plaintiff's motions for summary judgment (ECF No. 32 and No. 61) be denied, and Defendants' motions for summary judgment (ECF No. 45 and No. 59) be granted dismissing this case.

Should the court adopt the report and recommendation in this case, the court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the undersigned recommends granting Defendants' motion for summary judgment, the undersigned discerns no good-faith basis for an appeal. Should the court adopt the report and recommendation and should Plaintiff appeal this decision, the court will assess the $505 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505 appellate filing fee in one lump sum.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

      /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:    February 28, 2019